Your argument first this morning, case 21-1436, Santos-Zacaria v. Garland. Mr. Hughes? Thank you, Mr. Chief Justice, and may it please the Court. The Court of Appeals erred in dismissing Petitioner's improper fact-finding claim in three separate ways. First, unlike several of its neighboring provisions, the exhaustion requirement in 1252d1 does not contain the requisite clear statement to render it jurisdictional. Second, and regardless, any issue preservation requirement is not statutory and thus not jurisdictional. And that is especially so since the government's rule is not normal issue preservation, where issues must be raised before a decision, but rather a super-strong rule where a litigant must, in some poorly defined category of cases, request post-decision reconsideration. Third, because a motion to reconsider is not a remedy available as of right, a non-citizen does not need to file such a motion to properly exhaust. I'd like to start with this last point, which has tremendous practical implications. And if we are right that Petitioner properly exhausted, she prevails regardless of d1's jurisdictional status. The government correctly concedes that a non-citizen need not normally file a motion to reconsider. This should foreclose the government's position because the government has no textual basis to argue that motions to reconsider sometimes qualify as remedies available as of right and sometimes not. As we have described, a motion to reconsider is plainly a discretionary remedy. Well, is that right? How do you analyze it? You have an absolute right to file a motion for reconsideration, right? It may be discretionary whether you're going to get reconsideration or not. So how do you parse that? Where do you look to see if something is a matter of right? Is it being the right to seek it or the right to have the court look at a particular thing? How do you? I think the term as of right, Your Honor, is one that's been well-defined in centuries of judicial practice as one where the decision-maker lacks discretion. And I'd point the Court to this Court's Rule 10, just as one place to begin, where the Court says review on a writ of certiorari is not a matter of right but of judicial discretion. And in the briefs, we cite several other examples, like appeals in the Federal Courts Rules 3 and 4. Well, but just to stop you there, review on certiorari is not a matter of right. You may not get review. On the other hand, you do have an absolute right to file a petition for certiorari. I'm just saying in one of those situations, where do you look to see if there's – where's the right? Is it in the actual decision of the court or is it in the right to petition the court to afford such consideration? So I think the distinction is whether or not there is that layer of discretion, because that's what as of right means as a technical term. And I think it has to mean that in this context, or else Congress's inclusion of the phrase as of right doesn't do any effective work in the context of this statute. Look to the examples the government points to as things that it calls discretionary. That's cancellation of removal, adjustment of status, those sorts of things. The government says those are discretionary. But note, if a noncitizen files a request for one of those things, they have a right to at least have it considered in the same way one would have a right to file the reconsideration motion. But nobody, including the government in those other contexts, thinks that that renders the thing that's being requested the kind of remedy that would be fairly described in law as one as of right. So again, if it's just the right to file, then that just effectively negates this limitation that Congress expressly put in to D-1. Why is, what is the remedy here? I guess I would have thought of an appellate remedy as, you know, vacatur or reversal, that kind of thing. And I think, you know, I can see where you're going with as of right. But when we think about the remedy, and this is a problem I think on the government side too, why would the remedy either be the right to file a motion or the review that you obtain? Neither one of those really seems like a remedy to me. I think in the context of exhaustion provisions, the notion of a remedy is usually considered what is something that is capable of being used. That's the term, available remedies, that the courts looked at in the Prison Litigation Reform Act. And it's capable of being used for getting relief for whatever the litigant's position is. So one, something that's a remedy is the kind of administrative mechanism that one could use to get some form of relief. And so that is why I think an appeal to the BIA, for example, would be an available remedy that we would agree would be one that would qualify as something as of right. Which really helps you, right? Because then if it's just shorthand for the procedure that would allow someone to get relief, then it does seem more like it's the actual review and not the filing of the motion. I think, yes, Your Honor, I agree with that. And again, we don't say that a motion to reconsider could not be a remedy. It's just not a remedy that is available as of right. It's a quintessential discretionary remedy. And to give purpose to Congress's limitation to remedies as of right, we think that's exactly the kind of category of thing that should be excluded. Can I ask you about the first issue, the question of whether it's jurisdictional? I read our cases to create a fundamental divide between statutes that speak to the court's authority and statutes that impose commands on litigants or prohibitions on litigants. And this statute, at least on its face, speaks to the court, the court's power to review. So why isn't that enough in this particular case? Your Honor, I certainly think that's a relevant factor, but by no stretch do I think that's a sufficient factor. And let me offer some other examples. So in the context of Section 1252 itself, we cite to Provision B-2 in the briefs, where B-2 says, quote, the court of appeals shall review the proceeding on typewritten briefs. That's mandatory. It uses the word shall. It's a direction at the court. It's saying what the court shall do. And it's in the context of review. This says may review only if, not if, only if. And this provision in 96 carries forward a prior version of this language that this court itself had referred to as jurisdictional. And so I guess still put aside the example you gave, why shouldn't the divide, and we referred in Fort Bend to the divide being does the provision speak to a court's authority as opposed to a party's procedural obligations? And this seems to speak to the court's authority because it says a court may review only if. Well, in a few ways, a few answers, Your Honor. First, there are additional examples. Habeas in Section 2254B speaks to the court's authority. The First Step Act speaks to court's authority, but those have been found to be non-jurisdictional. I can explain that. But on the recodification point, to Your Honor, there are two pretty essential points. First, I don't think it's fair to read stone as having said the exhaustion principle was jurisdictional. Certainly, there's no express holding that would trigger a recodification provision or doctrine. But second, beyond that, in 1996, Congress did change the language. Now, it didn't change the language enormously, but it changed the language. And I think this is important because in 1996, in ARERA, as we point out, in 12 other places, when Congress wanted to strip courts. I'm sorry to interrupt, but does this language speak to the court's authority? It directs actions courts take during review in the same way that B-2 does. I don't think, though, that necessarily means it is a limitation on the power of the court. At least that's not the only plausible understanding of the statute as a limitation on the power of the court. Do you think Congress could make an exhaustion requirement jurisdictional without using the word jurisdiction? I think it would be exceedingly difficult for the court to do so because — And why then do we have a special magic words requirement just for exhaustion requirements and not just follow the usual Fort Bend divide? So, Your Honor, I'm not suggesting there's some special magic words, but I think there are several factors that counsel here. One is the point of what Congress did in all the surrounding provisions. It had in this statute a special language when it wanted to. So I do think the magic words applies a bit differently in the context of this particular statute. But with exhaustion, especially in the context where it is an agency that is establishing the rules of exhaustion, it would be passing strange in our view that an agency has delegated the authority to establish rules that themselves then have jurisdictional character that limit the subject matter jurisdiction of Federal courts. We think if that's what Congress intended, it would need to say that expressly. Mr. Hughes, could you give me the example of how a provision, an exhaustion provision, would have to be worded to limit the court's jurisdiction without using the term jurisdiction? Your Honor, I don't think I have an example. But I do in this statute, when Congress wanted to speak in jurisdiction in 12 other places, it used the phrase, no court shall have jurisdiction. And I think that's pretty statute-specific evidence that when Congress meant to use jurisdiction in the statute, it had the language it had. So it really does seem like you're arguing for a magic words rule. And haven't we said that magic words are not required? Certainly, Your Honor. But I'm not talking about the general abstract of what applies in every case. I'm talking about in ARERA when Congress wrote this statute. It was fixated on what is going to be jurisdictional and what is not going to be jurisdictional. It had that language at hand. And it used, in this statute, very precise language. So if all that we had before us were the language of the provision, would it be jurisdictional? If we knew nothing. We have a provision that is worded exactly like this provision. But we don't have D-2. We don't have any of your other arguments. We just have the language. Would that be a jurisdictional provision? I don't think it necessarily would. But in undertaking the clear statement test, this Court says it looks to all of the traditional tools of statutory authority. Well, why would that language not be sufficient? Well, Your Honor, I don't. Because it doesn't include the word jurisdiction. Well, in this specific context, that's right. But also in describing the context of review, there is ambiguity in that language because review, it can mean in certain contexts an equivalence of subject matter jurisdiction. But it can also describe what it is a court is to do in the course of reviewing things for which it does have subject matter jurisdiction. So I do think there is inherent ambiguity there. But again, we don't look at just this one issue. We look at all of the traditional tools of interpretation. And I think that shows that, again, my burden is not to say that our argument is the better one. The Court was quite clear in Batchelor saying that's not the test. It's the government has to show their interpretation as jurisdictional is the only plausible argument for them to demonstrate that. And again, if we're wrong about this, it has the effect of delegating to agencies the ability to make rules that have jurisdictional character. All right. If we look at one of our own prior decisions handed down during the bad old days when the Court was not disciplined about the use of jurisdiction and a provision is described as jurisdictional, does it follow necessarily that that provision is jurisdictional? I don't think that it's necessarily the case if a court did something that I think Arbach calls a drive-by. No, it's not a drive-by. It's a pretty clear statement in the case describing this as jurisdictional, the issue. And the Court says it's jurisdictional. Well, I think the Court would have precedent to decide if it's going to adhere to a prior pronouncement of this Court or if there's a basis in changed case law to revisit that. So I think that that normal process would apply. But if the Court has held that it's jurisdictional not just in a passing statement but in a reasoned holding, that that's going to be binding. Well, I'm just wondering if I could. I'm sorry. One more follow-up, then I'm done. If that's so, then why would you even concede that a statute passed by Congress in the days when the Court and Congress were using the term jurisdiction in some instances to talk about claims processing rules, why would that even be sufficient? Well, I'm not sure I need to say that your argument goes that far. I think it's well understood that in this statute, in ARERA, Congress used jurisdiction in a particular way. Congress did, in fact, have jurisdiction stripping in mind in 1996. And in this statute, Congress was not using it in some loose sense of the word. It knew what it was doing in the statute. It just used the jurisdictional language when it wanted to here. The government says that this statute uses the words jurisdiction and judicial review interchangeably. You can see that in 1252A2 where it talks about matters not subject to judicial review and then there follow a whole list of provisions saying that no court shall have jurisdiction. So if that's true, if there's interchangeability between jurisdiction and judicial review in this statute, doesn't your argument on the meaning of D become much weaker? No, Your Honor. I don't think so. The government rests on A5 for that sort of interchangeability argument. And to the extent they think there is that sort of hypertechnical argument, it fails because A5 references a broader phrase, judicial review. And D1 notably doesn't actually use the term judicial review. It uses the term review. And I think that's distinct because review, again, can mean the concept of jurisdiction or it can mean the act of what a court does in the context of when it is reviewing something over which it does have jurisdiction. But, again, even if the court does not agree with us on D1, I think it should for the reasons we've said, there is no stretch in which this issue preservation principle that the government suggests itself has jurisdictional character. And I think that's a completely separate and independent concern with the government's position. Because, again, issue preservation, as this Court in Carr and Sims and a series of cases has said, is a doctrine that is distinct from remedy exhaustion. And we don't think there's any basis to find that there has been a clear statement in this statute to say issue preservation takes on jurisdictional character. The statute is quite clear. It says remedy exhaustion, not issue exhaustion. And beyond that, the kind of issue exhaustion, issue preservation, the government is pressing is not sort of the normal run-of-the-mill issue preservation that we think of in federal courts. Normal issue preservation is district court decides an issue. You go to the Court of Appeals in your brief. You have to preserve any arguments you wish for the Court of Appeal on paying a forfeiture or waiver. But that's not the principle that the government thinks is doing the work here. They think there is a sort of doctrine of preservation on steroids where after the agency decides the case, one has to go back to the agency to ask for reconsideration. That's not how things normally go. Well, it's more limited than that. It's where the agency decision itself, the IAEA decision itself, introduces a new error that couldn't previously have been known. In those circumstances, they're saying, I'm not saying I agree or disagree with this, but they're saying more narrowly, in those circumstances, you have to go back for the motion to reconsider. Well, I want to talk about what Congress did here and why I don't think that's a proper way to read the statute. But that rule, I don't think, Your Honor, is one that is especially administrable. As we point out how the Fifth Circuit has dealt with this, they have found that the most basic kind of administrative error, the agency didn't give reasons for its decision, is the kind of error that one has to present back to the agency on a reconsideration motion. I think that has taken this doctrine quite far to say if the agency just gives no reason that you can't go up to the Court of Appeals, you have to go back to the agency. I don't think that's a proper rule. But when Congress wants to have a reconsideration mechanism, there are a few ways that it does it. We acknowledge in the briefs in certain statutory schemes Congress has chosen to do so. For example, we point to the FERC scheme, 21 U.S.C. Section 825L. And the way that works in FERC and other agencies is the agency issues a decision and then after the agency issues a decision, the litigant who is disappointed has to go back to the agency and say the agency got these series of issues wrong and then their appeal is limited to the nature of those issues that have been presented. But when Congress does that, it does so with very express language that's nothing like what we have here. But importantly, structurally, it creates a tolling process whereby judicial review does not begin until that process is complete. The way the government envisions this statute is a litigant would have to first file a petition for review of the final order of removal. But at the same time, the government believes while you're filing that petition for review, to have a timely petition for review, your claims are simultaneously unexhausted and you must at that same time go back to the board and ask for a motion to reconsider. And I think that position is compounded by the fact that the government believes this is a jurisdictional rule. So take, for example, the only issue you're raising your petition for review is the argument that the government thinks is unexhausted. The government is setting up a scenario where a litigant has to file a petition for review that it itself believes the court of appeals at that moment lacks jurisdiction over because it's unexhausted, and then simultaneously exhaust that claim before the agency. Mr. Hughes? It's certainly an interesting process that's being posited. And one wonders how many circles of review would be required if an agency's explanation continued to be deficient. Could it be more than one? Interesting questions. But I just, before you sat down, I wanted to give you a chance to respond to the government's suggestion that even if it loses on everything else, we should remain the case to allow the court of appeals to have the opportunity, sua sponte, to raise some objections of its own. And I know the government lawyer before the Fifth Circuit didn't raise any of these concerns and seemed to disavow them. I don't know whether that's waiver or forfeiture or what in your view, but I just wanted to give you a chance to talk to us about that. Thank you, Your Honor. So the government's opposition brief at page 13, they acknowledged at the trial stage that waiver and forfeiture would apply in this case. I think that acknowledgment was right then. Their suggestion that there should be a sua sponte ability of the lower courts to reconsider, I just don't think is correct. And we point the court to the Sangham-Smith decision where this court said pretty clearly that the lower courts, quote, should not sally forth each day looking for wrongs to right. You know, we're talking about the government here. If the government wishes to press an exhaustion, a failure to exhaust, they certainly have the ability to do so. And, again, it was an asset oral argument and the government did not take the opportunity to press exhaustion. And let me be clear. I think there's a substantive reason to think why it is government lawyers should, in fact, have this authority. When we're talking immigration cases, it's known that sometimes individuals are pro se or may not have every ounce of lawyering behind them. And it can well be appropriate to determine in specific cases the government wishes to waive exhaustion in the interest of justice and public confidence in the immigration system. Can I just ask you about whether or not we need to opine on the issue exhaustion versus remedy exhaustion if we agree with you about as of right? I don't think the court would have to, Your Honor. If the court agrees with us that we're correct in the meaning of D1 and that petitioner here properly exhausted, then the court need not reach the question of the jurisdictional status of these other issues. I do think petitioner prevails either if the court agrees that D1 is not jurisdictional at all or issue preservation is jurisdictional or alternatively if we're right about the meaning of the statute. So I think the court could resolve this case on a variety of those different grounds. Thank you. Ms. Thomas, anything? Does this still need work? Is there any scenario in which you see us addressing both questions? Assume we see... Again, Your Honor, I think we wouldn't presuppose to suggest how the court should resolve the case. We, I think, have three independent ways that we... No, I know they're each independent. I'm asking a different question. Is there any way we reach both? Well, if the court were to disagree with us on one, I think it would have to reach the other. Alternatively, if the court agrees with us on all of the points, I think it would be at the court's discretion if it believes that bringing guidance to the system here would warrant resolving both the jurisdictional question and the statutory question. So I think it would be at the court's election depending on how it wishes to resolve the issue. I have a very simple view. I know we've been trying hard to bring clarity to this area of jurisdiction or not. And you kept saying the plausibility argument. And you're right because it's strange language because it seems addressed to the court. But on an issue where it's relying on the litigant to exhaust, which is very different than most jurisdictional cases that have to do with subject matter classifications, correct? The court can't hear certain types of issues. And it has nothing to do with what the litigant does or doesn't do. I entirely agree, Your Honor. I think that's what this court's Patchak case teaches, which is if the restriction goes to something substantive about the nature of the claim, some substantive category, that context suggests it is more likely the court's speaking of jurisdiction. Rather, when Patchak gives exhaustion as a specific example and it goes to the procedure of how those claims are to be addressed, that is at least thumb on the scale towards thinking it's not a jurisdictional requirement. So what you're basically saying, both of you could have good arguments, as you do, but in that case, the tie is against jurisdiction. And again, in this specific statute, when Congress wanted to speak about jurisdiction, it had the express language at hand. It used it a lot. It would have been very easy to do this one. The court has no jurisdiction to review, and A and B would remain exactly the same, correct? In provisions above and below, Congress did exactly that. It revised this language. It didn't use the same language that it used everywhere else. And Stone did not speak about exhaustion. Stone talked about jurisdiction with respect to time limits, correct? Yes, Your Honor. So there is no holding by us that exhaustion is jurisdictional? Correct. We agree, Your Honor. Justice Kagan? In the reply brief, you say that when a statute addresses a court's competence to adjudicate a particular category of cases, it may indeed be jurisdictional. And then you discuss 2253, 867A, and 1447D, and you say those are all jurisdictional, even though they don't use the word jurisdiction, correct? Well, at the very least, they are far more jurisdictional than what we have here, because they are going to the nature of the claim, whereas this statute is agnostic to the nature of the claim, but rather goes to the procedure, whether the individual litigant used the proper procedure below. So do you think we should say, in the interest of providing clarity, because I think this can be a huge waste of time that's unnecessary for the lower courts and doesn't put Congress on notice of what the state of play is, should we say something like exhaustion requirements are jurisdictional only if the word jurisdiction is in there? That would be clear and provide better guidance than it could be, may not be. Maybe look at some other provisions, kind of throw it up in the air and see how it comes out, because that's just an invitation to a lot more lower court litigation, which truly serves no purpose. I think there would be no problem if the Court thought that that was an appropriate way to approach exhaustion requirements, because I do think exhaustion requirements, case after case, repeatedly asserts they're not the sort of thing that is typically jurisdictional. In this Court's decision on Ross v. Blake, for example, the Court went through a fairly extensive analysis that lower courts might need to undertake in order to determine whether or not a particular remedy in that case was available. That seems generally incompatible with the notion that this goes to a court's subject matter jurisdiction rather than to a claims processing rule. Thank you. Justice Barrett? Justice Jackson? Is there currently widespread confusion about whether or not exhaustion requirements are jurisdictional? Well, I think this statute shows that there is fairly widespread confusion, Your Honor. Many of the lower courts reliant on earlier holdings before this Court brought discipline to the notion of jurisdiction. But since the clear statement rule, have we ever found that an exhaustion requirement is jurisdictional? No, Your Honor, and we certainly don't think the Court should do so here. So I think the full tenor of this Court's cases are clear that an exhaustion rule is just incompatible with it being jurisdictional. Thank you. Thank you, Counsel. Ms. Dubin? Mr. Chief Justice, and may it please the Court, the INA creates an adversarial scheme that authorizes judicial review only after agency procedures are exhausted. That reflects Congress's judgment on how best to manage the high volume of immigration cases to achieve uniformity, efficiency, and fairness in an overburdened system. Petitioner's arguments conflict with that judgment in two ways. First, Petitioner argues that her failure to exhaust is not a jurisdictional defect. But 1252d1 imposes a direct limit on a court's power, providing that a court may review a final order of removal only if the alien exhausted all administrative remedies available as of right. That language speaks clearly to a court's authority, not simply to what a litigant must do. Congress need not use the word jurisdiction, and there is no special rule for exhaustion requirements. Critically, this Court has never held that a restriction like this one is not jurisdictional. Petitioner's contrary argument would upset Congress's judgment that appellate courts should review board decisions, not adjudicate arguments in the first instance. Second, Petitioner dilutes the statutory exhaustion requirement. She does not seriously dispute that issue exhaustion is required, at least by regulation. Yet she draws on Social Security cases to say that the INA omits that critical obligation. But nothing in the Social Security Act even referenced administrative exhaustion, and that scheme is inherently non-adversarial. By contrast, the INA expressly requires administrative exhaustion in a highly adversarial system where non-citizens have long been required to identify errors for review. Petitioner can explain why Congress would codify the doctrine of administrative exhaustion, but leave out this essential requirement. The Court should reject Petitioner's approach and hold that non-citizens cannot forego available agency procedures to raise issues in federal court in the first instance. Here, where the board allegedly introduced a new error, that means filing a motion to reconsider. Petitioner's failure to do so forecloses judicial review. I welcome the Court's questions. Can you give us an example of another provision where as of right, the phrase as of right is used to describe a discretionary motion? I don't have an example of that, but I think what's important is that Petitioner's examples of as of right are, as the Chief Justice was saying, examples where you're talking about whether you're entitled to the relief at issue, whereas in the exhaustion context, the relevant question is whether you're entitled to file for a particular remedy, which is capable of use to obtain that relief, and that's what the Court said in Ross v. Blake. So in the exhaustion context in particular, what you want to know is whether the non-citizen has taken up all opportunities to present the agency with her arguments. I also just want to note that a motion to reconsider is not something that gives the agency unfettered discretion. It's reviewable for abuse of discretion, and if the agency, for instance, were to say that an impermissible fact-finding claim is meritorious, but we just don't want to grant the motion, that would be an abuse of discretion. I guess I don't understand. I'm sorry. You sort of seem to be distinguishing as of right in the exhaustion context, and can you say again why you think that a situation in which the particular mechanism at issue is the motion for reconsideration that can be filed, it's when the statute says the particular mechanism has to be available as of right? It's a mechanism. It's a procedural mechanism that you have the right to file, and it's capable of giving you some relief. I don't think as of right is doing any work in that analysis. If you file it and you have a right to file it, then it's available. But what does it mean for it to be available as of right? I thought that meant that the recipient of it, the agency or the administrative body, has no choice but to grant the motion, and by grant I mean give you reconsideration. It's nondiscretionary in terms of their reaction to it. So lower court appeals are nondiscretionary. You have a right to appeal. It's as of right, and the lower court has to review your appeal. By contrast, a cert petition is not as of right. You have the right to file it. We receive it, but we don't have to review it. That's discretionary. So if I'm right about that, am I using as of right in the appropriate way or the way you understand it or not? That's not the way we understand it in the statute, and I think actually the certiorari example is a good one because when we say that certiorari is not available as of right, what we're not talking about is the right to file a petition for certiorari. What we're talking about is the right to review on certiorari. And why isn't that exactly what we're talking about here? Because I don't think that should be the inquiry in an exhaustion requirement. We don't want to know whether if you file it, you're entitled to relief. We want to know if you file it, you're entitled to have the agency consider your arguments, and that's what we want to have happen. That's the entire structure. No, no, no, but if you're talking about a motion for reconsideration, it's the same. Does the agency have to consider your arguments on reconsideration? If they do, then it's as of right. Only we know in this context, they don't. You have a right to file it, but just like a cert petition, they can say, we don't want to look at this motion for reconsideration, and that's all. I think that's not correct, Your Honor. As I mentioned earlier to Justice Thomas, I think that the right understanding of how a motion to reconsider works is that if you have a meritorious claim and it's not blocked by other procedural defects, for instance, that you failed to raise it earlier when you should have and things like that, so you have an impermissible fact-finding claim, and you brought it at the right time and for the right reasons, and the agency nonetheless denies a review because they simply don't feel like granting it, because they simply don't want to give you relief, that would be an abuse of discretion in this context. If you are right about what as of right means, Ms. Dubin, then wouldn't there be an obligation to file in every case? But in parts of your brief, you suggest that there's only an obligation to file when the BIA itself has introduced the error, and I don't understand how the two parts of your position can coincide. Yes. And I think that you have our position correct, and I think that it comes from the exhaustion requirement, what it means to exhaust. The requirement that a litigant exhaust comes from administrative exhaustion, from well-settled principles, and what that requirement means is that you have to give the agency the chance to correct its own errors, but it doesn't require that you give the agency multiple chances to correct its own errors. So that's what makes it such that a motion to reconsider is only available as of right when you haven't yet raised the argument before. Another way, I think, to think of the same restriction. I see how that makes sense. I just don't see how you get it from the text of the statute, how you're able to parse the text on the one hand to say that there's an obligation and on the other hand to say that that obligation disappears when you've already had a first shot. Right. So I think there's two ways to parse the statutory text to get to that requirement. One is the exhaustion requirement, which is what I was highlighting before, which brings with it this doctrine of administrative exhaustion, and that's what this court said in Woodford in interpreting the PLRA, which uses similar language. The second way is from available, I think, because the agency is not going to hear arguments you made before, and they've said that in re-OSG, which is agency precedent. So under this court's precedent in Ross v. Blake, it's simply not available to you to file a second motion to reconsider in that circumstance. Can I ask you a question on the first issue, the broader jurisdiction issue? I think the other side, as I understand their position, says the reference to court supports you, but in this particular context, two things override that. One being the references to jurisdiction elsewhere in the statute, and the second being that this is an exhaustion requirement. So why isn't that the better way to read the statute, given the broader context? Right. So I think that, I mean, I didn't take petitioner to take a square position on this, but I take petitioner to sort of indicate that if it was just the plain text alone here, we have a very good argument that this is jurisdictional. But I think you're right that petitioner is saying that the rest of the statutory context cuts the other way, and we see it differently. I think 1252 cuts in favor of this provision being jurisdictional because it doesn't use the word jurisdiction exclusively as the way of talking about a court's authority, and those are the provisions that Justice Kagan flagged earlier in 1252a2 and also 1252a5. I think what petitioner's response to that is, well, those use the words judicial review and not review. And I think that's slicing the bologna a little bit thin. I don't think there's a – I read 1252a5 exactly the opposite way, that you can read it as Congress was quite aware that it was using these two terms in the statute and that the two terms meant something different, except for in that purpose with respect to the availability of habeas, they should mean the same thing. But that Congress was saying, we're taking notice that both of these terms exist in this statute, and here we want them to have the same consequence. But in other respects, not, because they're two different terms. Right. I think that that would be one argument if all you had was 1252a5, but you also have 1252a2, which says matters not subject to judicial review and then lists a number of things about jurisdiction. So I don't think that explanation would help there. But I think the second part of this answer is that 1252d1 has a prior source. It comes from 1105a. And this is the language that Congress had used in 1105a much before ORIRA. When Congress then codified this provision in ORIRA, it was after a lot of courts of appeals, and this Court had described that provision as jurisdictional. So there's no real, like, mystery as to why the Court used the language it did in 1252d1. It didn't codify the exact language. It codified almost exactly the same. You keep using the word almost in your brief also, but it didn't. That's the point. So I think what I think is critical about what the changes that Congress made from 1105a to 1252d1 is that Congress all of the time. Sotomayor, I know it's what you think is critical, but go back to the operative question, which is the fact that we're going back and forth, doesn't that prove your adversary's point, that there's a plausible argument? And once there's a plausible argument, it's not jurisdictional? I don't think there's a plausible argument. And the reason is because of what changes Congress made from 1105 to 1252d1. All Congress did in the relevant part of the statute was change from a passive voice and a double negative. So the original provision said an order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted administrative remedies. And our provision says a court may review a final order of removal only if. That is a classic cleaning up of language, not meaning to change the substance of the prior provision. But does that help you or hurt you? Because it certainly sounded to me like the former formulation was more of a claims processing issue. I thought you were suggesting that the change was made to make it more jurisdictional. But read the former language again. An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right. And that sounds to me like you could replace shall not be reviewed in that particular situation with the court shall dismiss. Would you agree that if it said the court shall dismiss any application by an alien unless there is exhaustion that that would be claims processing and not jurisdictional? No. But I think the important point is that we don't think the other provision was less jurisdictional. We think 1105. I know. And that's what I'm trying to explore. It seems to me that if you're saying these two are the same and the former sounds at least to me in not power of the court but more the court shall dismiss, the court shall not review in the sense of, you know, you're looking at various claims and which ones are you going to decide, doesn't that hurt you? I mean, this language, a court may review only if. That's today's language. And I take the point that that sounds like you're speaking to the power of the court. But the prior language that you read to me did not sound like you were speaking to the power of the court or at least Congress was. It sounded like Congress was saying essentially the court shall dismiss this application if they haven't exhausted. And you now seem to be suggesting that no change substantively was made between the two. And I think that actually hurts you. I think so what I'm what I think we're disagreeing on is whether so this is just phrased the same language, it shall not be reviewed by any court versus a court may review only if. To me, the only difference between those two commands, which are both directed at the court, and I think that's the critical point for purposes of exhaustion is that one is written as shall not be reviewed by any court and one is a court may review only if. But in any event, neither of those say the language that appears everywhere else when the court is really speaking to jurisdiction, right? Like, is it your suggestion that when the court said no court shall have jurisdiction to review, which it says many, many times, you think that the court that the Congress was using interchangeably that language and the one in our statute, both to be referring to jurisdiction? Correct. Counsel, can I ask you? Go ahead. Go ahead. Go ahead. Well, I was going to switch to waiver of forfeiture. Okay. So then one question on Justice Jackson's questions. I think the key is on the prior language. This court had said it's jurisdictional, right? This court has said it's jurisdictional. And in Nikian, we repeated that post the new act and post Arbol, right? So that's what I thought was your argument was the language didn't really change in substance. We called it jurisdictional, so it's still jurisdictional. That's correct. But that is absolutely correct and 100% agree with it. But I do want to say that I think what this court's cases have been saying over and over again and saying that there doesn't need to be a magic word requirement is that a limitation on what a court may review is talking to the court to judicatory authority. And both of them are written that way. But also, if you had any doubt, then yes, definitely. Okay. Justice Barrett. Counsel, I just wanted to ask you about the waiver of forfeiture. Let's say that we disagree with you about jurisdiction. At the cert stage, you seem to indicate that waiver of forfeiture would apply. So if we disagree with you about jurisdiction, shouldn't we just remand to the permissible fact-finding claim, or do you think that the waiver of forfeiture issue would still be alive and that there's a possibility that you didn't forfeit it? We think what would be alive is the application of the Day v. McDonough principle. And I just want to highlight that we did flag that in our brief in opposition. It's in footnote 3 on the same page that Petitioner's Counsel pointed to. And the application of that principle turns on whether it was appropriate to bring up for the Court of Appeals to raise to esponte something that we did not strategically waive. And I think that would be the inquiry in that case and I think would be the Court of Appeals to undertake that in the first analysis. Can I ask a question about if you were to lose this case on the first issue, would it be better for us for clarity purposes to say exhaustion requirements are not jurisdictional unless the word jurisdiction is used just so the lower courts don't thrash around in this unnecessarily for years on end? I think the Court has been pursuing clarity in this area and I do think that this provision comes as close as you can to saying this is a limitation on a court authority without using the word jurisdiction. So if you disagree with that, I do think it would be very helpful. Okay. So that's helpful. But would there be systemic harm that the government is aware of from us saying, you know, in exhaustion requirements, in this Arbol world, an exhaustion requirement subcategory is only going to be jurisdictional if the word jurisdiction is used? Are you aware of any systemic problems that would arise from a clear statement to the lower courts like that? I'm not aware of systemic problems that would arise from that. I think if you were very concerned about that, you could say, you know, going forward for provisions drafted after this date. Well, I don't think – well, I won't speak more to that. Okay. Is there any case in which this court has applied the clear statement rule since Arbol and found that exhaustion was jurisdictional, that you're aware of? I think the closest is Smith v. Berryhill in the Social Security context, where the court recognized that the finality requirement in the Social Security Act is jurisdictional. Finality. Yes, but the court has referred to that requirement in the Social Security Act as an exhaustion requirement. It's not the type of exhaustion requirement we have here, but it's an exhaustion requirement that the court has found continues to be jurisdictional post-Arbol. On the exhaustion precedent that was being discussed earlier with your colleague on the other side, my understanding of all the exhaustion cases we have is that not a single one of them that I'm aware of or that was cited to us at least spoke to the court's authority. Is that your understanding as well, as distinct from putting an obligation on the litigant in the statutory language? Yeah, and I think the best example of the comparator is the PLRA, which is written as no action shall be brought, which is a very different type of phrasing as opposed to a limitation on a jurisdiction. It's not as though those cases used that sort of distinction. I mean, maybe they didn't have to, but they spoke in pretty general terms about how exhaustion requirements are generally non-jurisdictional, much like we've said statutes of limitations are usually non-jurisdictional. And maybe you could come up with something that suggests a different rule in a particular case, but all of these cases, and there are quite a lot of them, just sort of assume, say that the presumption is that exhaustion is non-jurisdictional. So I don't think that's the right way to read those cases. There are a few cases that refer to exhaustion requirements in tandem, hand in hand, with claims processing rules, which I take the court to mean in the paradigmatic case to be a filing deadline, a timely filing requirement. And there have been exhaustion requirements that this court has considered that have looked like a filing deadline requirement. So an example of that is the deadline for filing a charge with the EEOC. But then there's no requirement after that that the EEOC go through an adversarial adjudicative scheme to actually look at what happened before a court will review. It's just a filing deadline with the EEOC. And the court has seen exhaustion cases like that. But I don't think the court has looked at an exhaustion requirement like this, which goes to the structure of the agency scheme, and the idea that a court of appeals will only be sitting there to review what has gone through an adversarial agency adjudication in the first instance. And I don't think that you can read the court's prior references to exhaustion cases to include that particular context in which we think it would be very appropriate for a jurisdictional requirement to exist. Ms. Steuben, I understand that we could stop at the end of QP1, say it's not jurisdictional, and remand, and have fun with the sua sponte question. But the QP2, if the government were to have actually objected or might in a future case, seems to me pretty important and likely to impact a very, very large number of immigration appeals. And therefore, I wonder whether the government's view, whether it does make sense for us to go ahead and address that now so that everybody has clarity on the playing field. Yes. So the courts of appeals all agree that an issue of exhaustion is required under the INA. That this provision, whether you read it as a statutory or regulatory obligation, agency rules require issue exhaustion. Having to refile a petition for reconsideration, that question is what I'm aiming at. So I did want to highlight, though, the most important thing is that the normal context in which this comes up is from an immigration judge to the board. You didn't make a particular claim against what the immigration judge when you appealed to the board. But put that aside. I'm talking about from the BIA to the court of appeals. Can the court of appeals take it up when there could have been, theoretically, a petition for rehearing to correct the BIA's faulty reasoning? Okay? I would think that comes up an awful lot, or could come up an awful lot, especially if we don't answer the question. And so I'm just wondering whether the government would agree that it makes sense for us to go ahead and address that question. I think it nearly always comes up in this context, when you have an impermissible fact-finding claim. Right. Because that's the type of claim that the board is introducing a new error, and that's when it comes up that you would have a jurisdictional exhaustion requirement, say, that you needed to raise that to the board. And I do think it would be helpful to address that if the court was going to give clarity to that area. Counsel, can I follow up on Justice Gorsuch? So, you know, that's the remedy exhaustion question. Do you agree, though, that issue exhaustion, or let's see, I thought this was a little bit unclear in the briefs, that issue exhaustion could also exist as a court-made doctrine requiring that the issue have been exhausted even if the statute speaks exclusively to remedy? So if we do decide the remedy question that Justice Gorsuch is referring to, that doesn't mean that we're ruling out the possibility of issue exhaustion as well? I agree with that, and that's what I was trying to say, and I apologize for going a little off track there. But what I was trying to say is that it's extremely important to the way the system works, and it would be very destabilizing to not require issue exhaustion, whether it's as a matter of statute, as a matter of regulations, or as a matter of judge-made doctrine. The agency, since 1951, has required you to present specific issues to the board, and that's critically important for the way the board operates, given the high volume of cases and that it's an adversarial system in which litigants are expected to develop their own claims. I guess I don't understand why, even if you're right that there's some sort of an issue exhaustion requirement here, that wasn't met in these circumstances. I mean, isn't the issue on appeal whether the presumption of future persecution was rebutted, and wasn't that what the agency was deciding? So Petitioner brought two claims. Petitioner brought when she went to the Court of Appeals. One claim was that. One claim was about the substance of the decision below and whether she had, in fact, was entitled to withholding. But one claim was about an impermissible fact-finding claim, that the board had violated its own regulations by doing a fact-finding when it adjudicated her appeal. But the fact-finding was to an end. I mean, wasn't the ultimate issue is whether the presumption of future persecution was rebutted, and there were facts that the fact-finder looks at to make that determination. And so to the extent the board disagreed, they looked at other facts, that's really all part of the same issue, isn't it? The issues here are certainly related, but I think there's a big difference between saying that the procedural objection to what the board did, right, violating the board's own regulations, versus the substantive determination, did the board correctly or incorrectly find that she was entitled to withholding or that the presumption had been rebutted. That's a separate claim and a separate question. And as an administrative matter, sort of an administrability, your suggestion is that a person would have to figure out, parse it that narrowly to determine whether or not they had to make a motion for reconsideration as a jurisdictional matter related to that issue but not that one? Issue exhaustion across administrative context requires parsing. I mean, for instance, I think a couple years ago in Ramirez v. Collier in the PLRA context, the court looked to whether the prisoner had raised the audible prior claim as opposed to just a regular prior claim. You are looking to what sort of issues and arguments have been brought up to this point, but I think to the extent you're worried about confusion, this has come up, as I mentioned earlier, in the impermissible fact-finding context. Because what the noncitizen is trying to do is add a claim, add a claim that's a procedural claim in addition to her substantive claim, and that claim is a claim that the board introduced a new error. So that is where the court's appeal is. So what about Justice Gorsuch's previous question to other counsel? How many times do we have to have reconsideration? Like, what if the board introduces a new error in the context of this motion for reconsideration? Does this go on ad infinitum in your view? I think that's the beauty of the as of right language. It only allows for one motion to reconsider because that's what you're allowed under the statute and the regulations. On the question that Justice Barrett and Justice Gorsuch asked, this may be repetitive, but I just wanted you to follow up. Sure. You're worried if you lose this case that we say something about, can you repeat that just so we don't inadvertently do something that's going to cause problems? Yes. We are worried that you would say that there's no issue exhaustion requirement in this context, whether as statute or regulation. We think that would be clearly wrong because the regulations require issue exhaustion. I don't take petitioner to be seriously disputing that there is an issue exhaustion requirement. And it's critically important to have that issue exhaustion requirement because the board can't pick through the immigration judge decisions to figure out what you think the errors are. You need to present those to the board. So it's very important to keep intact that issue exhaustion is required in this scheme. I do think it is required as a matter of statute and it's jurisdictional, but the critical point is that issue exhaustion is required. Okay. Second question, different one. What's the Court of Appeals standard of review on an impermissible fact-finding claim? So it's going to be coming up from a motion to reconsider because that's the circumstance in which you have to review it, and they will review it for abuse of discretion. But there is no indication, and we think it would be incorrect, that if you have a meritorious impermissible fact-finding claim and the board nonetheless rejects it and there's no procedural bar to them reaching it, that would be an abuse of discretion. Okay. So would it be abuse of discretion even if you lose this case? In other words, they haven't brought it in a motion to lose on the third issue, I guess. It depends. Are you following the question? I believe so. Okay. But if I'm not, please let me know. It depends if you see it as a legal error or a factual error, but if it was a legal error, it would be reviewed de novo, and if it's a factual error, it would be reviewed for substantial evidence. But I don't think the distinction matters here because, like I said, if you have a meritorious impermissible fact-finding claim under any of the standards of review, abuse of discretion, de novo, or substantial evidence, you would prevail. Can you describe what you think an impermissible fact-finding claim is when it's successful? I think it's when the board finds facts that the immigration judge didn't consider and uses that to unrest its decision on that. So I think why that's not the case here is because what the board did is reweigh the same facts the immigration judge considered, but this time with the presumption that the immigration judge found didn't apply. So instead of saying that these facts mean that you haven't shown entitlement to withholding without a presumption of future persecution, the board here said even if you include the presumption of future persecution, we think it's been rebutted. Suppose the government made just that argument before the board and the petitioner responded, you can't decide the case on that basis because that would be impermissible fact-finding. And suppose that the board then rules in your favor. Under those circumstances, wouldn't the impermissible fact-finding issue have been decided by the board? And under those circumstances, would it be necessary for the petitioner or someone else in a similar position to file a motion for reconsideration? No, because in that circumstance the board would have decided it and there's no obligation to keep bringing the same arguments to the board. Can I ask you, getting back a little bit to the jurisdictional, I guess I'm a little worried that the fact that this exhaustion provision is directed at the court may not necessarily be indicative of its jurisdictional character. So I can imagine a provision that says a court must dismiss a final order of removal if the agency, you know, I'm sorry, if the alien has not exhausted all administrative remedies. Would that be jurisdictional to you just because it's directed to what the court must do? I think provisions that are directed to what the court must do is what this court has been looking for in this series of cases. That's what the court says. But in those cases, it's always what the court must do with respect to a particular category of substantive claims. I think Justice Sotomayor said this before. And this is very different. It's what the court must do, but then it says depending on which procedural hoops the party has or has not jumped through. So the second half of this provision is very much looking towards what the party is doing. You know, all Mr. Hughes needs is a plausible reading. You have half of this provision. He has the other half of this provision. The cases that you are talking about are quite different because they don't make the criterion one that has to do with what the party is obligated to do. When you make that the criterion, doesn't this become not a jurisdictional provision? Or at least, doesn't it plausibly become not a jurisdictional provision? I don't think so. I think that the court said this in Rockwell, but Congress can define jurisdiction as it wishes, depending on what it decides is the requisite criteria. Here, what it didn't want is... Well, it totally can. But the question is, how are we going to read the language in front of us? And we've consistently said that when the key thing is what the party has to do, that's non-jurisdictional. And here, everything depends on what the party has done or not done. Right. But I don't think it was just the key thing is what the party has to do. I think it was that the only person that Congress meant to restrict is the party. Congress didn't mean to restrict the court. I would also just say, then, in the Court's prior cases, they haven't only had jurisdiction turn on whether it's a subject matter. In Gonzalez and Donato, both of those turned on the lower court procedures, and that is how the jurisdiction bar worked in both of those cases. Thank you, counsel. Justice Thomas? Justice Alito? There are circumstances in which there's a constitutional basis for a clear statement rule. But here, I take it we're just interpreting a statutory provision. So what basis do we have for imposing a clear statement rule either retroactively or prospectively on Congress? Are we not, even if it's not desirable to have to decide all these on a case-by-case basis, isn't that our obligation to decide the meaning of particular provisions that come before us? Pre-Arbo, I think that is what the Court was doing. But then for a long time now, the Court has said that a clear statement rule applies in this context. We didn't feel the need to fight that. Well, what is our authority to do that? I think that the Court was trying to do it as a matter of divine and congressional intent. The idea was that when Congress wants to speak in jurisdictional language, it speaks clearly. So that was the authority. Everybody was saying this is what Congress is doing and descriptively describing that. I think that in some cases, especially in the early cases, what the Court was doing was it was seeing provisions that really looked like they went to a cause of action, like the number of employees under Title VII. And the Court was saying those really aren't what Congress would have meant to be jurisdictional. I think this case is many steps past this because you have a limitation that's addressed to a court. And I don't think that in Arbo and the cases that came right after it, the Court was trying to say that that sort of thing isn't what Congress would have meant to be jurisdictional. Do you think there's an empirical basis for that? We have gotten into Congress's mind and said, you know, when they impose an exhaustion requirement, we think that almost always they mean that that's not jurisdictional in the true sense of the word. I definitely don't think so in the exhaustion context, especially like here. And this is something that I was saying earlier. I think that when Congress imposes a restriction on the relationship between an adjudicated agency proceeding and a court of appeals, it actually would want that to be jurisdictional. And if we're looking to what Congress would want, I think this is exactly the type of provision that Congress would want to be jurisdictional because it means that a court of appeals won't be sitting there reviewing agency actions in the first instance. It will have the benefit of reasoned decision making that might avoid the need for judicial review altogether. Justice Sotomayor? Justice Kagan? Justice Gorsuch? Justice Barrett? Justice Jackson? Can I just clarify that last point? Because I thought when we were talking about jurisdictional, we were talking about Article III. Is that what we mean by – in which case there is a constitutional concern here. There is some, you know, responsibility on Congress's part to be clear about what it is it's doing in terms of restricting the authority of the court. So do I have that wrong? Maybe I'm back in the old days thinking of jurisdiction in different ways. But I thought the whole point was we wanted to make sure that jurisdictional determinations were taken seriously because they implicate these constitutional concerns about the power of the court. I think the source of the clear statement rule is much more the assumption that this is how Congress drafts in the jurisdictional area. And I think you see that in Arbo and the cases that came right after it. I think even if you did see this as some sort of constitutional limitation, this is the sort of case in which you would particularly want to enforce that limitation because of what I was saying to Justice Alito. Thank you, counsel. Mr. Hughes, rebuttal? Thank you, Mr. Chief Justice. So I'd like to start with D1, the as of right, because this does come up an awful lot and I think the court's guidance would be helpful. As to as of right, we just don't think the government has any role for that statutory text that isn't already captured by the separate term available. And in many exhaustion provisions, Congress spoke about available remedies. But here Congress added more, added as of right, and we think that statutory language has to have a purpose and only petitioner gives that language meaning. Next, the government, in order to try to escape the result that their textual interpretation would lead, that every noncitizen always has to file a motion to reconsider, I heard the textual argument that their retort is that a motion to reconsider would be improper in the event that the board has already resolved or decided that issue. But that just can't be right because a motion to reconsider, as the name implies, reconsider, the classic use of that is to go back to the board and say, well, you decided this thing, this issue of fact or this issue of law, but we think the thing that you decided, you got wrong. That's inherent in the concept of a motion to reconsider. So I don't think it works for the government to suggest that a motion to reconsider when you are just straightforwardly asking the board to reconsider what it already did is somehow procedurally improper such that that their statutory argument would ultimately lead. As to the jurisdictional status of D-1, we do think the court has plainly adopted the clear statement rule, and for all of the reasons we've discussed, this just doesn't satisfy it, and certainly not the issue preservation requirement that the government requires. Again, it's not a normal issue preservation requirement, but one that is much more muscular, requiring parties just not to preserve their issues when they go up to the appellate body, but to go back to that appellate body and say, you introduced a new error. Congress can do that if it wishes. It has done so in other statutes, but it creates a structure that makes sense, that tolls judicial review, and provides for that expressly. Congress just did nothing of the sort here. Ultimately, we think our positions just accord with the text, and they create a sensible statutory structure, and it properly empowers government lawyers to find waiver or waive exhaustion, as is typically the case of exhaustion statutes, where that would be appropriate to do so. We just don't think this is jurisdictional, and we also think Petitioner properly exhausted. Thank you, counsel. The case is submitted.